# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GIFFORDS LAW CENTER TO PREVENT
GUN VIOLENCE,
268 Bush Street #555
San Francisco, CA 94104,

*Plaintiff*,

vs.                                                Case No.

DEPARTMENT OF JUSTICE
950 Pennsylvania Ave., NW
Washington, D.C. 20530

*Defendant*.

-------------------------------------------------------------------------------------------------

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      Plaintiff Giffords Law Center to Prevent Gun Violence ("Giffords Law Center")[1]

brings this action against Defendant Department of Justice ("DOJ"), to compel compliance with

the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  Defendant has failed to respond to

Plaintiff's request for records that reveal: whether officials from DOJ communicated with, or

were otherwise influenced by, individuals affiliated with the Washington gun lobby in the period

immediately following the mass shooting in Las Vegas, Nevada on October 1, 2017.

2.      The records Plaintiff seeks are of significant public importance.  The policy

choices made by the Trump Administration, as well as its public response to prominent instances

of gun violence, mirror closely, if not exactly, the views and communications strategies preferred

---

[1] Between the time it filed the FOIA request at issue here and the time it filed this law suit, Plaintiff changed its
name from the Law Center to Prevent Gun Violence to Giffords Law Center to Prevent Gun Violence.  Plaintiff
submitted the FOIA request at issue in this lawsuit under its previous organizational name, the Law Center to
Prevent Gun Violence.

and employed by the Washington gun lobby. Indeed, with the Administration's support, the U.S. House of Representatives is currently advancing legislation, and is soon expected to pass, a bill that the National Rifle Association ("NRA") has identified as its top legislative priority, and that it urged Congress to pass in its official response to the Las Vegas shooting.[2]

3.      It appears that the Administration is coordinating with, or taking direction from, the Washington gun lobby in responding to mass shootings and promoting particular legislative priorities.  Plaintiff brings this action to determine whether, and to what extent, this apparent coordination has been accomplished through communications with officials at DOJ.

4.      Defendant has failed to provide substantive responses to Plaintiff's FOIA request. Judicial action is therefore necessary to compel compliance with the FOIA and to ensure a timely production of responsive records.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6.      Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), because Defendant is located in Washington, D.C., and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Washington, D.C.

## PARTIES

7.      Plaintiff Giffords Law Center is a nonprofit unincorporated association operating under section 501(c)(3) of the Internal Revenue Code.  Based in San Francisco, CA, Giffords Law Center also has staff members located in New York, NY, and Washington, D.C.  Plaintiff is

---

[2] Nicole Gaudiano, *House committee approves NRA-backed concealed carry bill, as other gun measures stall*, USA Today, Nov. 29, 2017, https://www.usatoday.com/story/news/politics/2017/11/29/house-committee-takes-up-nra-backed-concealed-carry-bill/903001001/.

one of the nation's leading legal and policy organizations dedicated to finding sensible solutions that will prevent further gun violence.

8.      Defendant is a federal agency within the meaning of the FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  Defendant has possession, custody, and control of records to which Plaintiff seeks access.

## FACTUAL ALLEGATIONS

9.      The Trump Administration has appeared to move in lockstep with the Washington gun lobby in terms of its public comments on gun regulation and gun violence, particularly in the wake of mass shootings.  This alignment was readily apparent in the wake of the deadliest mass shooting in modern American history on October 1, 2017 in Las Vegas, Nevada and, more recently, after the November 5, 2017 mass shooting in Sutherland Springs, Texas that claimed the lives of more than two dozen parishioners in a small-town church.

10.      While the NRA issued no public statement in the immediate aftermath of the Las Vegas shooting, Dana Loesch, a spokeswoman affiliated with the lobbyist group, called for "prayer" and a tempering of calls for a policy response.[3]  The NRA's official response to the Las Vegas tragedy, issued on October 5, 2017, likewise rejected calls for discussion of policy solutions that could reduce gun violence, and instead urged Congress to pass dangerous concealed carry "reciprocity" legislation that would put law enforcement at risk and allow dangerous people to carry guns nationwide without regard for the laws of the states they are in.[4] Consistent with the request, the House Judiciary Committee approved the NRA-favored

---

[3] Dana Loesch (@DLoesch), Twitter (Oct. 2, 2017, 8:25 AM),
https://twitter.com/DLoesch/status/914828794640420864.
[4] Chris Cox (@ChrisCoxNRA), Twitter (Oct. 5, 2017, 3:02 PM),
https://twitter.com/ChrisCoxNRA/status/916015643664646144.

"reciprocity" legislation several weeks later, and it is likely to be approved in the House in December 2017.[5]

11.    The Administration read from the same playbook.  President Trump offered his "condolences" and "sympathies" in the wake of the shooting, but did not address the pressing need to strengthen the nation's gun laws.[6]  Similarly, when the White House was asked to address calls for common sense gun reform, White House Press Secretary Sarah Huckabee Sanders refused, saying now was not the time for such a conversation.[7]  White House talking points similarly asserted that it was too soon to engage in a policy discussion on gun violence. They further asserted that cities like Baltimore and Chicago "show[] that more gun laws on the books may not work,"[8] a common Washington gun lobby talking point that ignores the reality that guns trafficked from elsewhere are nevertheless responsible for the vast majority of gun deaths in those cities.[9]

12.    When it came to the devices used to enhance the lethality of the weaponry used by the Las Vegas shooter, the Administration again toed the NRA line.  The NRA's statement on the Las Vegas shooting suggested that the organization was open to an administrative "review" of the regulation of the devices, so-called bump stocks, that allow semi-automatic rifles to

---

[5] Nicole Gaudiano, *House committee approves NRA-backed concealed carry bill, as other gun measures stall*, USA Today, Nov. 29, 2017, https://www.usatoday.com/story/news/politics/2017/11/29/house-committee-takes-up-nra-backed-concealed-carry-bill/903001001/.

[6] Donald J. Trump (@realDonaldTrump), Twitter (Oct. 2, 2017, 7:11 AM), https://twitter.com/realDonaldTrump/status/914810093874671617.

[7] Callum Borchers, *White House: Now Is Not the Time to Talk about Gun Control. But 'If You Look to Chicago …'*, Wash. Post (Oct. 2, 2017), https://www.washingtonpost.com/news/the-fix/wp/2017/10/02/white-house-now-is-not-the-time-to-talk-about-gun-control-but-if-you-look-to-chicago/?utm_term=.43b4c55d1a3b.

[8] NBC Politics (@NBCPolitics), Twitter (Oct. 3, 2017, 4:48 PM), https://twitter.com/nbcpolitics/status/915317663789928448.

[9] Jeremy Berke, *50 Maps That Show How Guns Are Trafficked into Every State*, Business Insider (Jan. 24, 2016), http://www.businessinsider.com/atf-maps-show-state-gun-trafficking-2015-11/#the-atf-traced-5891-firearms-in-alabama-in-2014-the-vast-majority-3579-were-pistols-and-linked-to-possession-of-weapon-and-firearm-under-investigation-charges-1; *see also* Shelby Bremer, *Majority of Guns Used in Chicago Crimes Come from Outside Illinois: Report*, NBC 5 Chicago (Oct. 30, 2017), https://www.nbcchicago.com/blogs/ward-room/chicago-gun-trace-report-2017-454016983.html.

function like fully-automatic rifles.[10]  Shortly after the release of the NRA's statement, the White House shifted its position to align with that of the NRA.  In response to a question about the NRA's statement on bump stocks, Sarah Huckabee Sanders responded that "it's something we're very open to."[11]  Sanders stated, "We know that members of both parties and multiple organizations are planning to take a look at bump stocks and related devices [and] [w]e certainly welcome that.  We'd like to be part of that conversation."[12]

13.    Within two weeks of the Las Vegas shooting, the NRA's line on bump stocks hardened, and the organization made clear it opposes any Congressional action on the devices.[13] To date, no action has been taken by the Trump Administration or Congress to regulate the sale of bump stocks.

14.    The responses of the NRA and Administration to the Sutherland Springs shooting played out, similarly, in parallel.  After the execution-style killings of 26 parishioners at a worship service, President Trump suggested it was too soon to discuss any changes to gun policy, that the shooting was not a "guns situation," and that the incident "would have been much worse" if an armed bystander who intervened after the shooter had exited the church where the massacre took place had not done so.[14]  Days later, the President repeated the same themes in a response to a reporter's questions, suggesting the Sutherland Springs shooting was a "situation that probably shouldn't be discussed too much right now," that the country should "let a little

---

[10] Chris Cox (@ChrisCoxNRA), Twitter (Oct. 5, 2017, 3:02 PM),
https://twitter.com/ChrisCoxNRA/status/916015643664646144.
[11] Noah Bierman, *Trump Administration 'Open' to Debate on Banning Bump Stocks*, L.A. Times (Oct. 5, 2017),
http://www.latimes.com/politics/washington/la-na-pol-essential-washington-updates-trump-administration-open-to-debate-1507232723-htmlstory.html.
[12] *Id.*
[13] Lauren Fox, *NRA Opposes Bump Fire Stocks Bills in Congress*, CNN (Oct. 13, 2017),
http://www.cnn.com/2017/10/12/politics/nra-opposes-bump-stock-bills/index.html.
[14] Katherine Faulders & Jordyn Phelps, *Trump Says Texas Church Mass Shooting Not a 'Guns Situation,' Blames Mental Health*, ABC News (Nov. 6, 2017), http://abcnews.go.com/Politics/trump-calls-texas-church-shooting-act-evil/story?id=50950818.

time go by," and that there would have been "hundreds more dead" had a neighbor not arrived on the scene and returned fire at the shooter.[15]  The President's comments, again, closely tracked the NRA's oft-repeated narrative that a good guy with a gun, trained by the NRA, was the hero who stopped the carnage at Sutherland Springs, without addressing how gun safety measures could have saved lives.[16]

15.    As set forth in greater detail below, Plaintiff submitted a FOIA request to DOJ on October 10, 2017 seeking records that would reveal the extent to which the Washington gun lobby has sought to influence Defendant's carrying out of its official duties—and the Administration's broader policy choices and public discussion of gun violence—through communications with officials at DOJ.

16.    Defendant has failed to meet its statutory obligations with respect to Plaintiff's FOIA request.

Plaintiff's FOIA Request

17.    To understand, and explain to the public, the extent to which individuals affiliated with the Washington gun lobby affected the statements and the action of Administration officials by speaking with, consulting, engaging with, or otherwise attempting to influence officials at DOJ in the period immediately following the mass shooting in Las Vegas, Nevada, Plaintiff requested that DOJ produce the following within twenty (20) business days ("FOIA Request"):

   a.    All records sent or received containing any of the following terms: NRA, NRA-ILA, national rifle association, rifle association, nra.org, nraila.org, Pete Brownell, Wayne LaPierre, Josh Powell, Chris Cox, Richard Childress, Carolyn Meadows, Wilson Phillips, John Frazer, Dana Loesch, Steve Sanetti,

---

[15] Ian Schwartz, *Trump vs. Reporter: Gun Control "Would Have Made No Difference," Hundreds More Would Be Dead*, RealClearPolitics (Nov. 7, 2017), https://www.realclearpolitics.com/video/2017/11/07/trump_to_reporter_gun_control_would_have_made_no_difference_hundreds_more_would_be_dead.html.

[16] Ellie Silverman, *When a Bystander Fired on the Texas Church Shooter, the NRA Found Its Hero*, Wash. Post (Nov. 8, 2017), https://www.washingtonpost.com/news/post-nation/wp/2017/11/08/when-a-bystander-fired-on-the-texas-church-shooter-the-nra-found-its-hero/?utm_term=.be144d2b4eda.

Larry Keane, the National Shooting Sports Foundation, NSSF, Gun Owners of America, gun lobby, silencer, suppressor, bump stock, CCR, reciprocity, SHARE Act, National Firearms Act, NFA, Las Vegas, Vegas, Mandalay Bay, shooting, Harvest Festival, Stephen Paddock, or derivations thereof.

b.   Any and all records that refer or relate to the development of the White House talking points on the Las Vegas mass shooting, which were made public through NBC news reporting on October 3.[17]  This includes, but is not limited to, all drafts of the statement and communications regarding its content.

c.   Any and all records that refer or relate to the NRA statement on the Las Vegas mass shooting that was made public on October 5. This includes, but is not limited to, all records containing a copy of the statement or excerpts thereof, and any communications regarding its content.

18.   Plaintiff requested that Defendant search for records sent or received by the following DOJ Offices: Office of Attorney General, Office of the Deputy Attorney General, Office of Public Affairs, and Office of Legislative Affairs.

19.   The search time period requested for Plaintiff's FOIA Request was from October 1, 2017 to October 8, 2017.

20.   Plaintiff sought a waiver of search and duplicating fees under 5 U.S.C. § 552(a)(4)(A)(iii), which requires waiver of fees if the disclosure is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

21.   On October 11, 2017, Defendant provided a letter acknowledging receipt of the FOIA Request, assigning DOJ Tracking Number EMRUFOIA101017-2, and notifying Plaintiff that the request had been referred to appropriate DOJ components that had been requested, or which were otherwise likely to have the records sought.

---

[17] NBC Politics (@NBCPolitics), Twitter (Oct. 3, 2017, 4:48 PM), https://twitter.com/nbcpolitics/status/915317663789928448.

21.     On November 7, 2017, Plaintiff received an automatic electronic response from Defendant indicating that the request was still under agency review.  The automatic response provided no substantive response.

22.     On November 8, 2017, Defendant provided a letter acknowledging receipt of the FOIA Request "on behalf of the Offices of the Attorney General, Deputy Attorney General, Public Affairs, and Legislative Affairs" (the "Second Response").  The Second Response stated that the relevant component within DOJ had not received the FOIA Request until October 11, 2017.

23.     Defendant further asserted that the request presented "unusual circumstances" meriting placement on Defendant's "complex" processing track.  Defendant stated that it would need to extend the response time to the FOIA Request by more than the ten days provided for by statute, 5 U.S.C. § 552(a)(6)(B)(i)-(iii).  Defendant did not provide an estimate of the number of additional days in excess of the statutory period that would be necessary to process the FOIA Request.

24.     The Second Response also stated that no decision had been made on Plaintiff's request for a fee waiver.

25.     As of filing this Complaint, Plaintiff has received no additional communications from Defendant regarding its FOIA Request.

26.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i) and (ii), after Defendant determined that "unusual circumstances" delayed its response to Plaintiff's FOIA Request, Defendant was required to determine whether to comply with Plaintiff's FOIA Request within thirty business days of receipt of the request and to notify Plaintiff immediately of its determination, the reasons therefor, and the right to appeal any adverse determination.

27.     Defendant received Plaintiff's FOIA Request on October 11, 2017, making its initial determination regarding Plaintiff's FOIA Request due by November 24, 2017.

28.     Defendant has not complied with its obligations under FOIA because it has not determined whether to comply with Plaintiff's FOIA Request by the statutory deadline. Specifically, it has not produced any records to Plaintiff, nor has it informed Plaintiff of the scope of records that it will produce or the scope of the records that it plans to withhold under any FOIA exemptions.

## CLAIM FOR RELIEF

29.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

30.     By failing to respond to Plaintiff's request within the statutorily mandated time period, Defendant has violated its duties under 5 U.S.C. § 552, including, but not limited to, the duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive records.

WHEREFORE, Plaintiff prays that this Court:

1.   Order Defendant to conduct a search for any and all records responsive to Plaintiff's FOIA Request using search methods reasonably likely to lead to discovery of all responsive records;

2.   Order Defendant to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption for Plaintiff's FOIA Request;

3.   Enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

9

4.     Order Defendant to grant Plaintiff's request for a fee waiver;

5.     Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

6.     Grant any other relief this Court deems appropriate.


Dated: December 4, 2017                          Respectfully submitted,

                                                 /s/ *Javier M. Guzman*
                                                 Javier M. Guzman (D.C. Bar No. 462679)
                                                 Robin F. Thurston (*pro hac vice motion to be filed*)*
                                                 Democracy Forward Foundation
                                                 P.O. Box 34553
                                                 Washington, D.C. 20043
                                                 (202) 448-9090
                                                 jguzman@democracyforward.org
                                                 rthurston@democracyforward.org

                                                 *Admitted in the State of Illinois; practicing under the supervision of members of the D.C. Bar while D.C. Bar application is pending.

                                                 J. Adam Skaggs
                                                 (*pro hac vice motion to be filed*)
                                                 Giffords Law Center to Prevent Gun Violence
                                                 223 West 38th St. # 90
                                                 New York, NY 10018
                                                 (917) 680-3473
                                                 askaggs@giffords.org